# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Somerset, Pennsylvania,   :
as Beneficiary of the Pennsylvania   :
Opioid Misuse and Addiction   :
Abatement Trust,   :
         Petitioner   :
  :   No. 1057 C.D. 2025
         v.   :
  :   Argued: May 12, 2026
The Board of Trustees of the   :
Pennsylvania Opioid Misuse and   :
Addiction Abatement Trust,   :
         Respondent   :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                **FILED: July 13, 2026**

      The County of Somerset (County) has filed a petition for specialized review, asserting that the Board of Trustees (Board) of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Trust) should have approved its expenditure of Trust funds for a youth program providing outdoor opportunities intended to benefit "at-risk" students. Having reviewed the record submitted to this Court and upon consideration of the County's arguments and the Board's responses thereto, we conclude that the Board's decision is deficient in that it lacks several characteristics of a reasoned decision suitable for appellate review. Therefore, we remand to the

Board with instructions that it issue an appropriate decision within 30 days.

## I. BACKGROUND[1]

### A. Trust

In 2022, the Commonwealth of Pennsylvania sued various pharmaceutical manufacturers and distributors of prescription opioids. The parties settled for approximately $1 billion. Pursuant to the terms of a consent judgment entered and approved by this Court, the Commonwealth created the Trust to receive, allocate, and disburse the settlement funds.

The Trust may approve the distribution of funds "only for the purposes set forth in Exhibit E to the Settlements." Am. Order, 10/15/24, § V(B).[2] Exhibit E is a 15-page list of approved programs and strategies addressing opioid addiction, divided into two schedules. The first schedule highlights and gives priority to core abatement strategies. Ex. E, Sch. A. The second schedule provides a non-exhaustive list of treatment and prevention efforts, as well as outlining other strategies to abate the opioid epidemic. Ex. E, Sch. B.

Each year, the Trust disburses funds to counties and other participating subdivisions, which are required to expend those funds timely and in compliance with Exhibit E. Am. Order §§ III(K), V(D)(10), VII. Each county is required to submit an annual report detailing the expenditures of such funds to the Trust.[3] Id. § V(D)(11). The Board conducts a retrospective review of the expenditures to ensure the spending has been consistent with Exhibit E.[4] Id. §§ V(B), VI(A)(3). If a county

---

[1] We glean the facts from the record.

[2] For convenience, we refer to the amended order that created the trust.

[3] It appears a county is responsible for submitting annual reports on behalf of participating subdivisions within its jurisdiction. Am. Order §§ V(D)(11), VII(A).

[4] It is unclear why the parties negotiated to permit expenditure of Trust funds before the Board approves the expenditure.

fails to file a report or if the Board otherwise determines that funds have been expended inconsistently with Exhibit E, then the Board "may withhold the next year's payments." *Id.* § X(C)(1).

A county or other participating subdivision can challenge the Board's decisions regarding compliance with Exhibit E in one of two ways. First, any "beneficiary of the Trust may petition the Court to allow spending on an item of abatement not contained in Exhibit E, provided such spending is deemed by the Court to reduce incidence or rate of opioid addiction and overdose deaths in the Commonwealth." *Id.* § VIII(F). Second, any "beneficiary of the Trust may file a complaint with the Board of Trustees if the beneficiary disputes an action by the Trust with regard to that beneficiary, provided that such complaint is filed within 30 days of when the beneficiary knew or should have known of the basis for the complaint." *Id.* § VIII(G).[5] "If the Board of Trustees' response does not resolve the beneficiary's complaint, the beneficiary may petition this Court for a resolution of its complaint." *Id.* § VIII(G)(2).

Per the Order, "the Trust is not a Commonwealth" agency, a local agency, a judicial agency, or a legislative agency. *Id.* § III(Q). This Court, however, retains jurisdiction over the Trust until its dissolution. *Id.* § VII(E). The participating subdivisions have agreed to this Court's jurisdiction and "have standing to petition this Court for enforcement of this Order and payment of the [funds] allocated to it." *Id.* § II(B). In July 2025, this Court further clarified its role by issuing a case

---

[5] The Board is responsible for establishing its own operating rules and procedures. Am. Order § VI(A)(5). To manage volume, the Board created three working groups to review county submissions and make recommendations, and it established a seven-member Dispute Resolution Committee (DRC) to hear beneficiary complaints under § VIII(G) at public meetings. To address disputes, the Board has adopted a multi-level review process, first by a working group, then the complete Board, and finally the dispute resolution committee (DRC). For ease, we may refer to DRC decisions as the Board's decisions.

management order (CMO), which directed Trust beneficiaries seeking relief under Section VIII(G)(2) to file a "petition for specialized review," which is governed by Chapter 16 of the Pennsylvania Rules of Appellate Procedure and addressed to this Court's appellate jurisdiction. *See* CMO, *Commonwealth v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243-244 M.D. 2022, filed July 22, 2025).

### *B. The County's Program*

In its 2024 report to the Board, the County listed "Movement Outdoors," a community youth program providing outdoor opportunities for children in 9th through 12th grade. Cnty's Pet. for Specialized Rev., 8/21/25, at 11-12. As an after-school program, the County reasoned that the youth involved do not typically participate in sports or other extra-curricular activities and, therefore, constitute an "at-risk" population of students. *Id.*

The County reported this program as compliant under Exhibit E, Schedule B, Part Two (Prevention), Subsection G(9), which permits "school based or youth focused programs" that have "demonstrated effectiveness in preventing drug misuse" and seem likely to prevent the uptake and use of opioids. After seeking additional information, the working group recommended non-compliance; on June 20, 2024, the Board voted to disapprove the program and notified the County on July 10, 2024.

The County appealed. At the September 5, 2024 public meeting, SCA Director Erin Howsare confirmed Movement Outdoors is not evidence-based and conceded the absence of opioid use disorder (OUD) counseling or risk assessments but described the program's alignment with federal strategies. *See* Tr., 9/5/24, at 21-25. Ultimately, the Board disapproved the County's program. *See* Bd.'s Final Decision, 9/9/24.

Thereafter, the County filed its Petition for Specialized Review, requesting that this Court reverse the Board's decision. The Board has filed an answer in opposition, and the parties have filed Court-ordered briefs.

## II. ISSUES

The County has presented two issues for our review. First, the County asserts that Movement Outdoors is an evidence-informed program and compliant with Exhibit E, Schedule B, Part Two, subsection G(9). Pet. for Specialized Rev. at 16. Second, in the County's view, the Board must adopt procedures that facilitate pre-approval of anticipated expenditures of Trust funds because retroactive review is improper and prejudicial to the County. *Id.*

## III. DISCUSSION

### *A. Arguments*

The County argues that the Board has misread Exhibit E, effectively requiring evidence-based programs while discounting evidence-informed approaches. According to the County, Movement Outdoors is evidence-informed by integrating practitioner expertise, lived experience, and Center for Substance Abuse Prevention (CSAP) prevention strategy (Healthy Alternative Activities), aligned with local needs (*e.g.*, a Pennsylvania Youth Survey (PAYS) identifying pro-social involvement as protective). Exhibit E does not define "evidence-informed," and accepted prevention strategies should qualify. The County's complaint and hearing presentation clearly relied on CSAP and Pa. Dep't of Drug and Alcohol Programs (DDAP) prevention planning, substantively articulating an evidence-informed rationale. *See* Cnty.'s Br. at 35-44.

The County is also critical of the retroactive review process. In its view, this Court should direct the Board to implement pre-approval procedures pursuant

5

to Section VI(A)(5) of the Order, given after-the-fact disapprovals unfairly prejudice beneficiaries. *See id.* at 44-47.[6]

In response, the Board critically describes the County program as an invitation to every student in the County "to engage in outdoor activities under the misguided assumption that any activity that might divert students away from idle time . . . is qualified for opioid settlement funding under Exhibit E." Bd.'s Br. at 16. Absent any programmatic or educational component, the Board flatly rejects the County's assertion that this program should receive Trust funds. *Id.*

Principally, the Board urges deference to its compliance determinations. *See id.* at 17-21. The Board stresses that it is not a government agency; however, pointing to the specialized knowledge and practical experience of its trustees, the Board draws an analogy to state agency decisions. *See id.* (citing, *e.g.*, *Rinaldi v. Bd. of Motor Vehicles*, 843 A.2d 418 (Pa. Cmwlth. 2004) (requiring due deference to the entity charged with interpreting and enforcing a foundational document); 2 Pa.C.S. § 704[7]). Further, the Board notes that it has adopted a

---

[6] The County also references *subsequent* developments in the Board's review process as evidence of the prejudice the County suffered in this case. *See* Cnty.'s Br. at 47-49 (discussing the formation of a technical advisory group (TAG) to assist participating subdivisions and an admission by one Board member that the Board must better inform counties as to what constitutes "evidence-based" programs).

[7] Section 704 provides:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 704.

comprehensive, multi-level review process, including iterative decisions by working groups, the complete Board, and the DRC. *See id.* at 19-20. Thus, by the time any dispute reaches this Court, the Board has reviewed a program's compliance with Exhibit E on at least three occasions. *Id.* For these reasons, the Board suggests that affording its decisions deference promotes efficiency, consistency, and predictability. *Id.* at 21.

The Board notes that the County proceeded under Schedule B, Section G(9) to establish compliance with Exhibit E.[8] *Id.* at 23. According to the Board, Subsection G(9) includes conjunctive requirements: a program must (i) be evidence-based or evidence-informed, (ii) be youth-focused/school-based, and (iii) have demonstrated effectiveness in preventing drug misuse and likely preventing opioid uptake. *Id.* However, the Board asserts, the County has admitted that its program was not evidence-based, failed to demonstrate that this program was evidence-informed,[9] and failed to provide any evidence demonstrating the program's effectiveness in preventing drug misuse and the use of opioids. *Id.* at 16, 21-31.

Finally, in the Board's view, the Order requires *retrospective* review via

---

[8] The subsection provides:

> G. PREVENT MISUSE OF OPIOIDS
> Support efforts to discourage or prevent misuse of opioids through evidence-based or evidence-informed programs or strategies that may include, but are not limited to, the following:
> . . . .
> 9. School-based or youth-focused programs or strategies that have demonstrated effectiveness in preventing drug misuse and seem likely to be effective in preventing the uptake and use of opioids.

Exhibit E, Sch. B § G(9).

[9] The Board also suggests that the County did not seek compliance as an evidence-informed program and, therefore, waived this contention. Cnty.'s Br. at 26-27. However, it is unclear if there is any requirement that a participating subdivision must expressly document all relevant modes of Exhibit E compliance. *See generally* Order.

annual reporting; a formal pre-approval regime would contradict Section V(D)(11) and exceed the Board's authority to adopt procedures only if consistent with the Order. The Board notes that counties can report "committed" (but not yet paid) funds and seek guidance from the technical advisory group (TAG). *Id.* at 33–38.

For these reasons, the Board asks that this Court affirm its decision and deny the City's Petition. In the alternative, if this Court is inclined to approve these subprograms under Section VIII(F), the Board requests that this Court expressly limit its decision and eschew any binding or persuasive authority. *See id.* at 38-39.

*B. Disposition*

Generally, this Court has the power to issue an order "as the interest of justice . . . may require." 42 Pa.C.S. §§ 323, 562. We may also "remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." *Id.* § 706. For example, this Court remanded for a Pa.R.A.P. 1925(a) decision because the trial court's order and record did not reveal the underlying reasoning. *Artisan Const. Grp. v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 84 (Pa. Cmwlth. 2022) (*Artisan*).

Instantly, the Board's September 9, 2025 email does not reveal the underlying reasoning for why the program fell outside Exhibit E. *Cf. id.* Under these circumstances, to provide a just "resolution of [Petitioner's] complaint," Am. Trust Order, § VIII(G)(2), we must remand to have the Board file an appropriate decision explaining its reasoning. *See* 42 Pa.C.S. §§ 323, 562, 706; *cf.* Pa.R.A.P. 1925(a); *Artisan*, 275 A.3d at 84. Without the Board's decision explaining its reasoning, we cannot conduct any appellate review. *See* Pa.R.A.P. 1601; *cf. Artisan*, 275 A.3d at 84.

The Board's decision must identify the Exhibit E Section(s) at issue and

explain why the disputed program does not qualify. The Board must provide specific findings that are relevant to its decision, with appropriate citations to the record that facilitate our review, and its decision must also reflect any credibility determinations that inform those findings. To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its decision, the Board must define those terms. In sum, the Board's decision must provide sufficient factual detail and reasoning that would permit this Court to exercise its appellate role in reviewing the Board's denial under Exhibit E.

## IV. CONCLUSION

For these reasons, we require the Board to thoroughly memorialize its reasoning before we can address our standard and scope of review and evaluate the Board's review of the City's expenditure of Trust funds. *See* 42 Pa.C.S. § 706. Accordingly, we remand to have the Board file a decision within 30 days, as set forth herein.

 

**LORI A. DUMAS, Judge**

Judge Covey did not participate in this decision.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Somerset, Pennsylvania,   :
as Beneficiary of the Pennsylvania   :
Opioid Misuse and Addiction   :
Abatement Trust,   :
              Petitioner   :
  :  No. 1057 C.D. 2025
              v.   :
  :
The Board of Trustees of the   :
Pennsylvania Opioid Misuse and   :
Addiction Abatement Trust,   :
              Respondent   :

# O R D E R

AND NOW, this 13th day of July, 2026, we REMAND to have the Board of Trustees of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Board) file a decision explaining its reasoning within 30 days. The Board's decision must identify the Exhibit E Section(s) at issue and explain why the disputed programs do not qualify. The Board's decision must include specific findings of fact and reflect its credibility determinations. To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its decision, the Board must define those terms. We ORDER the Prothonotary to serve a copy of this opinion and order on the Attorney General.

Jurisdiction retained.

_____
**LORI A. DUMAS, Judge**